### STALEY v. NEWMAN et al. (No. 11142.)

(Court of Civil Appeals of Texas. Fort Worth. April 25, 1925.)

**1. Bailment ⬮11—Lessor liable to lessee of oil rig for participation in trespass.**

In suit by lessee of oil drilling rig against lessor for damages for interruptions in use thereof, court properly held defendant responsible, and awarded damages for his participation in trespass, where it appeared that, though lessee paid lessor to move rig to desired location, lessor failed to settle with contractor who moved it, whereupon latter attached rig, and where it further appeared that privilege obtained by lessee of continuing operations was withdrawn at instance of lessor.

**2. Appeal and error ⬮1138—Error not reversible, where conclusion irresistible that parties have cured it by settlement.**

Where in action by lessee of oil drilling rig against lessor for damages for interference with use of rig, lessee was properly allowed recovery, but lessor was erroneously denied recovery on his cross-plea for use of machine, *held* judgment should be affirmed, where it appeared from written statement of accounting between parties, filed by lessor in answer to motion to dismiss appeal, that lessor had been paid rentals in question, and therefore nothing could be gained by reversing judgment to enable lessor to have trial on cross-plea.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Suit by H. J. Newman against C. R. Staley and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Cook, Cook, & Cole, of Vernon, for appellant.

Brown & Graham, of Graham, and Taylor & Taylor and H. M. Muse, all of Wichita Falls, for appellees.

CONNER, C. J. The appellee H. J. Newman instituted this suit against C. R. Staley and L. C. Bevins to recover damages alleged to have been occasioned by reason of interruptions caused by said defendants in the operation of an oil well drilling machine, which it was alleged had been leased by the plaintiff from the defendants.

The trial was before the court without a jury, and resulted in a judgment in favor of plaintiff as against the defendant C. R. Staley for the sum of $1,630, and against plaintiff in favor of defendant L. C. Bevins. No complaint is made of the judgment in favor of Bevins, and he will therefore not be noticed further in the court of this opinion. The defendant Staley, however, has duly prosecuted this appeal from the judgment rendered against him.

[1] The plaintiff in his petition alleged that the rig and tools had been leased from the defendant Staley to drill a well, for which the plaintiff had paid in cash at the time $750 for 50 days' use, and agreed to pay thereafter $20 per day for every day the rig was used after the 50-day period.

Plaintiff further alleged that by the terms of the leasehold contract the defendant Staley was to move the rig, together with the tools and equipment belonging to the same, from Electra, Tex., to the land in Young county upon which the plaintiff was to drill, and that plaintiff agreed to pay and did pay to said Staley for moving said rig the sum of $572. The plaintiff further alleged that the defendants had contracted with one Anderson to remove the rig from Electra, which Anderson did, but for which the defendants had refused to pay him, and that after plaintiff had begun drilling and had drilled several hundred feet, Anderson instituted suit against defendant Staley, and sued out an attachment against the rig and all tools and equipment, and thereby interrupted plaintiff's operations to his damage in specified amounts; that after several days of such interruption the plaintiff, through negotiations with the attorneys of Anderson, succeeded in getting the privilege of continuing the operations, which was done for a number of days until the defendant, Staley, ascertained the fact, whereupon at Staley's instance, advice, and command the privilege had been withdrawn, and plaintiff's operations again interrupted, to his damage on account of cave-ins, cost of suspended operations, etc.

The defendant Staley answered by general and special denials, and further set up a cross-action for rents accruing under the contract for the lease of the rig to the plaintiff.

There is no substantial conflict in the evidence. Both plaintiff and defendant in testifying substantially agreed upon the terms of the lease as alleged in the plaintiff's petition, and agreed that the plaintiff had paid the several sums of money specified by him for the purposes stated. It is also undisputed that Anderson, who moved the rig from Electra to the location in Young county, instituted suit against Staley, alleging nonpayment of his services in making the removal, and had at the time of the institution of the suit sued out a writ of attachment by virtue of which the constable of the precinct took possession of the rig and its equipment, and

further, that after a few days the plaintiff succeeded in securing the permission of Anderson and the constable in resuming operations, whereupon Staley after several days ascertained the fact and advised and directed the attorneys of Anderson to see that the constable retained in his possession the rig and equipment, threatening if there was a failure to do so to hold the parties named responsible for the rents sued for in his cross-action.

The amount of damages awarded to plaintiff does not seem to be questioned. Appellant's principal contention on this branch of the case is that he had nothing to do with the institution of the suit by Anderson, and nothing to do with the issuance and levy of the attachment. We think it clear, however, that, as against the plaintiff Newman, the writ of attachment was wrongful, and that in its issuance and levy Anderson committed a trespass upon property, to the use of which at the time plaintiff was rightfully entitled, and that the appellant, by his action in advising and commanding the interruption of such use after the levy of attachment, made himself a party to the trespass. In 26 R. C. L. p. 766, par. 15, it is said:

"It has been said that to render persons joint tort-feasors they must actively participate in the act which causes the injury, and that, to render one liable in trespass for the acts of others, it must appear either that they acted in concert, or that the act of the individual sought to be charged, ordinarily and naturally, produced the acts of the others. The degree of participation, however, does not affect the extent of liability, and all persons who command, instigate, promote, encourage, advise, countenance, co-operate in, aid, or abet the commission of a trespass by another are cotrespassers with the person committing the trespass, and are each liable as principals to the same extent and in the same manner as if they had performed the wrongful act themselves. He who commands or procures another to do an unlawful act is as responsible as a trespasser as he who commits the trespass with the wrongdoer, provided the act benefited or was done in the interest of the person adopting the same, and was ratified with full knowledge of the facts."

Mr. Cooley in his work on the Elements of Torts, published in 1895, on page 37 says:

"One may adopt or ratify a wrong done by another in his behalf, and thereby become liable as if he had advised or directed it."

And again says on page 38:

"When the wrong done was intended, the parties are supposed to intend the consequences which follow, and each must assume the responsibility of the misconduct of all. The person wronged may treat all concerned in the injury as one party, and if he proceeds against them jointly he is not bound to point out how much of the whole is attributable to one and how much to another. Neither is the jury to make any apportionment by their verdict. But the party injured may, at his option, proceed against any one or more of the parties responsible and enforce his remedy to the full extent, regardless of the participation of the others; for the wrongdoing of one is not diminished by the fact that others assisted or stood by and encouraged him, or interposed to prevent aid and protection. The rule applies to a party who sues out a void writ, to the magistrate who issues, and the officer who serves it; it is of no importance that the participation of one was insignificant as compared to that of another."

We think the decisions of the courts are in accord with the principles stated by these authors, and that, in harmony therewith, the court below properly held appellant responsible for and awarded damages against him for his participation in the trespass mentioned and the consequences flowing therefrom.

[2] The evidence does not disclose how or when the attachment mentioned was released, but it indicates that this was done, and that plaintiff continued to use the well-drilling machine in question, and that the 50-day period contracted for expired on the 4th day of August, 1923, which was 54 days prior to the trial in question. At $20 per day, under the terms of the contract, appellant would seem to be entitled to $1,080, covering the use of the machinery for this period. This was the claim set up in appellant's cross-plea, and the theory upon which it was rejected and judgment rendered against appellant on his claim therefor does not appear. Possibly it was on the theory that, by the levy of the writ of attachment to which appellant made himself a party, as hereinbefore stated, the rental contract between the parties had been breached by appellant, and that hence appellant would be entitled only to the reasonable value of the use of the machinery during the period stated, which was not shown, instead of the contract price. But whatever the reason, and regardless of whether the trial court erred in rendering judgment against appellant on his cross-plea, we find the question now immaterial, for the reason that in answer to a motion heretofore made by appellee to dismiss the appeal on the ground that all matters in controversy had been settled, appellant, Staley, exhibited a written statement of an accounting by the parties, signed by H. J. Newman, from which it appears that on the 22d day of November, 1923, Staley was credited, as rentals, with 108 days at $20 per day, and also credited with other items, all aggregating $2,650, from which was deducted the amount of the judgment secured by Newman in this case, to wit, $1,630, leaving a balance in favor of Staley of $1,020, which it is agreed Newman then at the time of such settlement paid Staley. The memorandum of this accounting shows that the $1,630 was "held awaiting the appeal of J. U. D. G."

The conclusion seems irresistible that at

this time there was a full settlement between the parties, and that it was agreed, in effect, that, in event the judgment in appellee's favor should be affirmed, nothing further would be due appellant, Staley, or, should the contrary be held and the judgment reversed, then Staley would be entitled to a further payment of $1,630 in event Newman should fail in the further prosecution of this suit. The judgment in the case was rendered on the 28th day of September, 1923. Counting from the 4th day of August, 1923, to the day of settlement, November 22, 1923, we find 108 days. So that the conclusion seems irresistible, as before stated, that appellee has been paid the rentals in his cross-plea, and that; inasmuch as we have found it necessary to affirm the judgment in Newman's favor, nothing is to be gained by a reversal of the judgment to enable appellee to have a trial upon his cross-plea.

The judgment below is accordingly in all things affirmed.